746 So.2d 49 (1999)
STATE of Louisiana, Appellee,
v.
Darryl HOWARD, Appellant.
No. 31,807-KA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1999.
Rehearing Denied September 16, 1999.
*51 Wilson Rambo, Monroe, Counsel for Appellant.
Richard P. Ieyoub, Attorney General, Don M. Burkett, District Attorney, Counsel for Appellee.
Before NORRIS, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The defendant, Darryl Howard, was indicted by a grand jury for aggravated rape, a violation of LSA-R.S. 14:42, second degree kidnapping, a violation of LSA-R.S. *52 14:44.1 and aggravated burglary, a violation of LSA-R.S. 14:60. After a jury trial, the defendant was found guilty as charged. He was sentenced to serve life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for aggravated rape, 40 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for second degree kidnapping, and 20 years imprisonment at hard labor for aggravated burglary. The trial court ordered the sentences for aggravated rape and aggravated burglary to run concurrently and the sentence for second degree kidnapping to run consecutively to those sentences.
The defendant appeals the sentences and the aggravated rape conviction. For the following reasons, we affirm the defendant's convictions and sentences.

FACTS AND PROCEDURAL HISTORY
On October 14, 1996, at approximately 10:00 a.m., the defendant, Darryl Howard, went to the residence of the victim, Brandy Marter, located in Mansfield, Louisiana, and inquired about a person unknown to the victim. According to Mrs. Marter, she advised him to inquire at her neighbor's house about the person and directed him to that residence. Shortly thereafter, the defendant returned to Mrs. Marter's residence and asked to use her telephone. She testified that she directed him to wait outside while she got the telephone for him. As she went to retrieve the cordless telephone, the defendant entered the residence and proceeded to hold her down, undress her and rape her. At the time of these offenses, the victim was seven months pregnant.
After the rape, the defendant demanded money from the victim and led her to her purse. After defendant determined that the victim did not have any money, he put her sweat pants on her and used duct tape to cover her mouth and to tape her hands behind her back. The defendant led the victim outside and put her into the trunk of his car clad only in her sweat pants. He then drove to a remote, wooded area located between Mansfield and Evelyn, Louisiana. The defendant took the victim from the trunk of the car and led her to a pile of logs where he placed logs across her stomach and used duct tape to tape her to legs to a log. The defendant then drove away.
After freeing herself, the victim covered her body with a piece of discarded carpet and walked to the roadway where she was discovered by two passersby. The victim was taken to her husband's place of employment and the police were summoned. The victim provided a physical description of the defendant, his clothing, the car he was driving and the contents of its trunk. Approximately one hour later, the defendant was apprehended about seven-tenths of a mile from the wooded area where he had left his victim. The car that he was driving at the time of his arrest, the contents of the trunk and his clothing matched the victim's description of the assailant and his vehicle.
On October 15, 1996, Brandy Marter went to the DeSoto Parish Sheriff's Office to examine photographs in order to identify her assailant. She examined a photographic lineup but failed to positively identify the defendant. However, she eliminated everyone in the lineup except the defendant as her assailant. The photographs used in the lineup were computer generated and the victim testified that, because of the quality of the photographs, she could not positively identify the defendant as her assailant. Afterwards, she viewed a live lineup where she also eliminated everyone except the defendant. However, she testified that "there was something different about one of his eyes," and therefore, she could not be sure that he was her assailant. Ultimately, the victim was shown a picture of the defendant in handcuffs that was taken shortly after he was arrested while he sat in the back of the police car. She then *53 positively identified the defendant as her assailant.
The defendant filed motions to suppress evidence and the photographic identification. The trial court granted the motion to suppress the single photograph of the defendant taken shortly after the rape. However, the court ruled that it would not suppress the identification of the defendant at trial if the victim could identify the defendant. The trial court denied the defendant's motion to suppress his confession.
After a jury trial, the defendant was found guilty of aggravated rape, second degree kidnaping, and aggravated burglary. The defendant appeals.

DISCUSSION

Assignment of Error No. 1
The defendant contends that there is insufficient evidence to support a conviction of aggravated rape. He argues that the evidence only supports a conviction of forcible rape because the state did not prove that the seven-months pregnant victim resisted to the utmost or was prevented from resisting the rape by threats of great bodily harm.
The question of sufficiency of evidence is properly raised by a motion for post-verdict judgment of acquittal. La. C.Cr.P. art. 821; State v. Edwards, 25,963 (La.App.2d Cir.5/4/94), 637 So.2d 600. The defendant failed to file such a motion; however, this court will review sufficiency of evidence when raised by formal assignment of error.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (La.1992).
LSA-R.S. 14:42 provides, in pertinent part:
A. Aggravated rape is a rape committed... where anal or vaginal sexual intercourse is deemed to be without lawful consent ... because it is committed under any of the following circumstances:
1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
D. (1) Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
LSA-R.S. 14:42.1 defines forcible rape as:
A. Forcible rape is a rape committed when the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent rape.
B. Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than five years nor more than forty years. At least two years of the sentence shall be without benefit of probation, parole, or suspension of sentence.
The distinction between aggravated and forcible rape has been addressed by our supreme court in State v. *54 Parish, 405 So.2d 1080 (La.1981). The Parish court determined that the legal definition of aggravated rape as defined in LSA-R.S. 14:42(2) is virtually identical to the definition of forcible rape because there is no essential difference between the specific results required by each crime definition. Both require that the victim be prevented from resisting the act by threat of great harm under circumstances where the victim reasonably believes that resistance would be futile. Forcible rape is merely a lesser degree of the crime of aggravated rape and is a responsive verdict to that crime. The only distinction between aggravated and forcible rape is the degree of force employed and the extent to which the victim resists. However, the jury is authorized to subject a guilty defendant to more severe punishment by convicting him of aggravated rape rather than forcible rape. The court then went on to conclude that it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, thereby assigning to the fact finder the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed. Finally, the court held that the proper standard of appellate review in these type of cases is:
... whether any reasonable jury [fact finder], viewing all of the evidence, in the light most favorable to the prosecution could find beyond a reasonable doubt that the defendant ... [caused] the results required by both the aggravated and forcible rape statutes and that the degree of force employed warranted punishment in the greater, rather than lesser, degree ... [405 So.2d at 1087] [Bracketed material added.]
See also, State v. Clark, 437 So.2d 879 (La.App. 2d Cir.1983).
Applying the above standard of review to the instant case, it is clear that the evidence supports a finding that the defendant is guilty of aggravated rape. A victim need not suffer physical harm to constitute the high degree of force necessary to support a conviction of aggravated rape. State v. Gaston, 412 So.2d 574 (La.1982); State v. Clark, supra. The victim testified that she repeatedly attempted to push the defendant away from her and she begged and pleaded with him to leave her alone because she was pregnant. The victim's resistance was to no avail because of defendant's tight grip upon her. The defendant repeatedly threatened to hurt the pregnant victim. The victim also testified that her living room was small and she was afraid that if a struggle ensued, she would fall or be pushed down, and consequently, her unborn child would be injured. She further testified that she did not feel that she was in a position to resist the defendant any more than she did without the risk of being seriously injured.
Viewing the evidence in the light most favorable to the prosecution, we conclude that any reasonable juror could have found beyond a reasonable doubt that the defendant was guilty of the greater offense of aggravated rape. This assignment of error is without merit.

Assignment of Error No. 2
In this assignment, the defendant argues that the trial court erred in failing to suppress the identification of the defendant at trial. The defendant contends that the victim's identification was produced by the police officers' unduly suggestive and improper action of showing the victim a photograph of the defendant that was taken shortly after he was apprehended.
To suppress an identification on grounds of suggestiveness, the defendant must prove both the procedure involved to be impermissibly suggestive and that the totality of the circumstances presented a substantial likelihood of irreparable misidentification. State v. Martin, 595 So.2d 592 (La.1992); State v. Harris, 28,517 (La. App.2d Cir.8/21/96), 679 So.2d 549, writ denied, 96-2954 (La.9/26/97), 701 So.2d 975. In evaluating whether the reliability *55 of an identification may outweigh the suggestiveness of the procedure employed, courts are directed to consider several factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Harper, 93-2682 (La.11/30/94), 646 So.2d 338; State v. Harris, supra.
In the instant case, the victim had several opportunities to view her assailant. The victim viewed the defendant when he came to her residence to inquire about another person, again during the time when the rape occurred, and during the time she was being taped to the logs. Due to the nature of the crime, the victim had reason to pay close attention to detail regarding her assailant. Her description of the assailant, his attire at the time of the act and the car he was driving and its contents matched that of the defendant and his vehicle at the time of arrest. Due to poor quality of the photographs in the lineup and a change in the defendant's physical appearance during the live lineup, the victim was not able to positively identify the defendant as her assailant. However, she excluded everyone except the defendant as her assailant. The time between the actual crime and the identification was minimal. The victim identified the defendant in a photograph one day after the actual crime. See, State v. Clark, supra.
In support of his argument, the defendant relies on State v. Swayze, 554 So.2d 249 (La.App. 3d Cir.1989). In Swayze, the victim's in-court identification of the defendant was held to be reversible error due to an impermissibly suggestive photographic identification employed during the investigation of the crime, thereby creating a substantial likelihood of misidentification. The armed robbery victim revealed under cross-examination that seven months after the crime, he had been shown a single photograph of a man by the district attorney whom he identified as the assailant. The photograph had been placed on a desk with other case evidence, including a layout of the store that the defendant had been accused of robbing. The victim then made an in-court identification of the defendant as the assailant and as the person in the picture that he had been shown. The third circuit held this as "a classic instance of an unnecessarily suggestive photographic lineup procedure," and found that the victim "was shown a single photograph under circumstances that would facilitate his associating the person in the photograph with the crime in question."
In the instant case, a photographic lineup using computer generated photographs was conducted and the victim eliminated all suspects except the defendant. The victim could not make a positive identification of the defendant due to her concern about the poor quality of the photographs. Later that same day, the victim observed a live lineup and she picked the defendant as her assailant. However, she expressed some concern about his left eye. She stated that his eye looked "different." Law enforcement officers later discovered that the defendant had been rubbing his eye and it had become red and swollen. Finally, the victim was shown a single photograph of the defendant which was taken on the day that the act was committed, shortly after the defendant was arrested. In this photograph, the defendant is handcuffed and sitting in the back seat of a police car. He was wearing a white t-shirt with a Nike logo. His attire matched the description given by the victim on the day of the rape.
The victim in the instant case made a positive identification of her assailant the day after the act and after she had given a detailed description of her assailant. There was not a significant chance of misidentification in this case. Under the totality of the circumstances, the in-court *56 identification of the defendant by the victim is well supported by independent sources and is therefore reliable.
This assignment is without merit.

Assignment of Error No. 3
The defendant argues that the trial court erred in conducting certain portions of the voir dire examination of prospective jurors outside the presence of the defendant in violation of LSA-C.Cr.P. art. 831.
The record reflects that there were at least three chamber conferences in which the questions concerning a juror's ability to serve were addressed. The defendant was not present during any of these conferences. The defendant was present during all of the open-court voir dire sessions and no contemporaneous objection was ever made by defense counsel to the court's failure to include the defendant during the in-chambers voir dire sessions.
LSA-C.Cr.P. art 841(A) provides in pertinent part:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.
Because defense counsel failed to make a contemporaneous objection as required by LSA-C.Cr.P. art. 841(A), the defendant is precluded from raising this issue on appeal. State v. Sherman, 630 So.2d 321 (La. App. 5th Cir.1993), writ denied, 94-0258 (La.5/6/94), 637 So.2d 1046.
This assignment of error lacks merit.

Assignments of Error Nos. 4, 5 & 6
The defendant argues that the trial court erred in imposing consecutive sentences for offenses arising from a single course of conduct, in imposing excessive sentences and in failing to adequately articulate for the record the considerations for the sentence imposed.
The test imposed by a reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not a rigid or mechanical compliance with its provisions. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Mims, 550 So.2d 760 (La.App. 2d Cir. 1989).
In the second prong of the test, the appellate court must determine whether the sentence is constitutionally excessive. A sentence violates LSA-Const. Art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in the light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
A trial court has wide discretion in imposing a sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court does not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Maxie, 30,877 (La.App.2d Cir.8/19/98), 719 So.2d 104.
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. LSA-C.Cr.P. art. 883. *57 Concurrent sentences arising out of a single cause of conduct are not mandatory and consecutive sentences under those circumstances are not necessarily excessive. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Maxie, supra. Among the factors to be considered in choosing whether to impose consecutive or concurrent sentences are the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victim, whether the defendant constitutes an unusual risk of danger to the public, defendant's apparent disregard for the property of others, the potential for defendant's rehabilitation, and whether the defendant has received a benefit from a plea bargain. State v. Maxie, supra.
In the instant case, the trial court provided comprehensive oral reasons for imposing consecutive sentences that reflect careful consideration of the provisions of LSA-C.Cr.P. art. 894.1. The trial judge considered the nature and seriousness of the present offense and the defendant's prior criminal conduct. The court ordered a pre-sentence investigation report (PSI) and noted that the defendant had two prior felony convictions, one for an aggravated burglary where the defendant attacked a female after breaking into her residence. The trial court also considered the fact that the defendant had been released from prison just over three months before he committed the current offense. The court concluded that, not only is there an undue risk that the defendant would commit another crime if he were allowed out of prison, but a likelihood that he would do so. The court found that the defendant manifested deliberate cruelty to his victim, knowing she was pregnant, thereby creating the risk of death or great bodily injury to her and her unborn child. The trial court noted that the defendant used actual violence in the commission of the crimes and has caused extraordinary permanent emotional injury and trauma to the victim.
Considering the defendant's criminal history and the nature of this crime, his sentences are not grossly out of proportion to the seriousness of the crime, nor are they needless and purposeless infliction of pain and suffering. The record reflects that the trial court adequately complied with LSA-C.Cr.P. art. 894.1 in particularizing the sentence to the defendant. We find no abuse in the trial court's discretion in sentencing this defendant to consecutive sentences. These sentences do not shock our sense of justice. These assignments are without merit.

ERROR PATENT
Our error patent review disclosed that the trial court informed the defendant that the prescriptive period for post-conviction relief is "three years from today's date." This is a common error. The three year prescriptive period does not begin to run until the judgment is final under LSA-C.Cr.P. art. 914 or 922; thus, prescription has not yet begun to run. State v. Harvey, 26,613 (La.App.2d Cir.1/25/95), 649 So.2d 783, writs denied, 95-0430 (La.6/30/95), 657 So.2d 1026, 1028; State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992).
The district court is hereby directed to send appropriate written notice to defendant within 10 days of the rendition of this opinion and to file proof of defendant's receipt of such notice in the record of the proceedings. State v. Mock, supra; State v. Smith, 600 So.2d 745 (La.App. 2d Cir. 1992).

CONCLUSION
The defendant's convictions and sentences are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before NORRIS, C.J., WILLIAMS, STEWART, CARAWAY, and DREW, JJ.
Rehearing Denied.