917 So.2d 1201 (2005)
STATE of Louisiana, Appellee
v.
Edward E. PRICE, Appellant.
No. 40,408-KA.
Court of Appeal of Louisiana, Second Circuit.
December 16, 2005.
*1203 Walter L. Perkins, Jr., Robert S. Noel, II, Monroe, for Appellant.
Jerry L. Jones, District Attorney, Madeleine M. Slaughter-Young, Assistant District Attorney, for Appellee.
Before WILLIAMS, STEWART and GASKINS, JJ.
WILLIAMS, J.
Ouachita Parish Grand Jury returned an indictment charging the defendant, Edward E. Price, with aggravated rape, in violation of LSA-R.S. 14:42. The matter proceeded to trial before a twelve person jury which found the defendant guilty as charged. Thereafter, the trial court sentenced the defendant to serve the mandatory term of life imprisonment without benefit of parole, probation or suspension of sentence. The defendant has appealed. Finding no error, we affirm the defendant's conviction and sentence.

FACTS
On October 27, 2002, the 22 year-old female victim, S.C.,[1] was a pharmacy student working as an Assistant Hall Director on a rotating assignment at Sherrouse Hall, an all-male dormitory on the campus of the University of Louisiana at Monroe. The defendant, Edward E. Price, entered the dormitory at approximately 10:00 p.m. and attempted to engage S.C. in conversation as she sat at the desk in the lobby area attending to her duties and studying. S.C. asked the defendant if he needed assistance, but he continued to ask her personal questions regarding where she lived and what kind of car she drove. After a while, S.C. ignored him and continued to study.
The defendant attempted to persuade S.C. to enter the men's restroom with a complaint about the sink not working, beckoning her to "come see, come see." S.C. explained that she was only there to assist, but would make a note of the complaint in the maintenance log in accordance with the proper procedure. Approximately a half an hour later, the defendant called to S.C. for help from the computer room, saying that there was a problem with logging on the computer system. She walked from the lobby area into the well-lit computer room. The defendant was alone.
While S.C. helped the defendant with the computer, he asked her if she would perform oral sex on him, and she refused. As S.C. finished showing the defendant how to log on to the computer, and realized that there was no problem with the computer system, she felt uncomfortable and turned to leave. The defendant then grabbed her from behind. S.C.'s attempts to scream, flail, and run were thwarted by the defendant, who covered her mouth and nose with one hand, pinned her arms down with an arm, and lifted her 95-pound body up off the ground. The defendant pushed S.C. into the corner of the room, and continued *1204 to demand that she perform oral sex on him. He threatened to hit her if she screamed and tried to push her body down on the floor in front of him. When S.C. managed to squirm away, the defendant picked her body up and slammed her down onto the floor, causing her to hit her head. The defendant then straddled S.C., covered her mouth and nose, pinned down her arms, and dragged her out of the computer room, across the lobby and into the women's restroom. During the scuffle he stepped on her feet and she lost one of her shoes. S.C. testified that she thought she was going to die because the defendant was stronger than her and she could not escape, and she was unable to breathe. The defendant kept telling her not to screamthat nobody was around and nobody would hear her.
An eyewitness, Travis Reuther,[2] was standing in an unlighted room adjacent to the lobby when he saw the defendant, "a large man," lift the victim, "a small girl," up in the air and then drag her through the lobby into the women's restroom. The defendant had the victim's mouth covered, but the victim made eye contact with Reuther by staring at him. The victim was kicking her legs trying to get free. It was clear to Reuther that the trip to the restroom was not consensual, and he called the police.
The defendant took S.C. into the very last stall in the women's restroom and made her sit down on the toilet. He held her there in a tight grip with one arm and kept a fist against her head. The defendant straddled S.C. and ordered her to be quiet and to perform oral sex on him or he would "snap" her neck. She thought he was capable of breaking her neck because the stall was small, and the defendant was "pretty much" on top of her. He was wearing sweat pants with an elastic waistband which he pulled down just far enough to expose his penis. The defendant moved very close to S.C. and forced her head toward his erect penis, which she was forced to hold in her hand and "lick" with her tongue twice. The defendant told her to "stick it in your mouth and suck it," but she kept telling him, "No, no I won't do that, no." S.C., who was fully clothed, resisted his attempts to touch her breasts and tried talking her way out of the situation by asking the defendant to let her go. She also asked him why he was doing this, but he kept telling her to be quiet. S.C. heard voices outside the restroom door, and soon someone entered the bathroom and asked who was in there. As the defendant leaned backwards out of the stall to pull his pants up, S.C. pushed him away and ran out of the bathroom past some university police officers. She was crying hysterically. The officers brought her the shoe she had lost in the scuffle. Her hair was mussed-up and her eyeglasses were bent because they had been knocked off her face several times.
University Police Officer Michael Jack was dispatched to Sherrouse Hall in response to Reuther's 9-1-1 call. When Officer Jack and three other officers arrived, they spoke to Reuther and proceeded to check the restrooms. Officer Jack entered the women's restroom and called out. He saw the defendant's "back half" as the defendant stood in the last stall. Officer Jack saw the victim push past the defendant and run from the stall and out of the restroom. The officers called the defendant over to them. He was fully dressed when he walked toward them. Officers interviewed the victim, who was still hysterical from what had taken place.[3]
*1205 The defendant was arrested and initially charged with aggravated oral sexual battery. On November 15, 2002, he was charged by bill of information with forcible rape, in violation of LSA-R.S. 14:42.1. On March 14, 2003, the defendant was charged by the grand jury with aggravated rape, in violation of LSA-R.S. 14:42.
At the jury trial on the merits, S.C., Reuther and police officers testified regarding the above-related facts. Both S.C. and Reuther identified the defendant in court as the perpetrator. At the conclusion of the trial, the defendant was convicted as charged of aggravated rape. He now appeals.

DISCUSSION

Sufficiency of the Evidence
In this assignment of error, the defendant cites State v. Parish, 405 So.2d 1080 (La.1981), compares its facts to the facts of the instant case, and contends his offense involved minimal force which did not justify punishment in the greater degree as an aggravated rape. Specifically, the defendant notes that he did not strike the victim; her clothing was not torn; she only sustained one red mark on her face; she required no medical treatment; and she attended only two counseling sessions following the crime. The defendant maintains that the evidence, viewed in the light most favorable to the prosecution, justified a verdict of an offense no greater than forcible rape.
The question of sufficiency of evidence is properly raised by a motion for post-verdict judgment of acquittal. State v. Howard, 31,807 (La.App.2d Cir.8/18/99), 746 So.2d 49, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190. LSA-C.Cr.P. art. 821 provides that a motion for post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This standard, now legislatively embodied in LSA-C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. In the absence *1206 of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
The Louisiana Supreme Court has held that the testimony of the victim alone in a sexual assault case is sufficient to convince a reasonable fact-finder beyond a reasonable doubt of a defendant's guilt. State v. Rives, 407 So.2d 1195 (La.1981); State v. Wade, 39,797 (La.App.2d Cir.8/09/05), 908 So.2d 1220; State v. Elzie, 37,920 (La.App.2d Cir.1/28/04), 865 So.2d 248, writ denied, 2004-2289 (La.2/4/05), 893 So.2d 83. Furthermore, such testimony alone is sufficient, even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant. State v. Wade, supra; State v. Elzie, supra. See also State v. Simpson, 39,268 (La.App.2d Cir.1/26/05), 892 So.2d 694; State v. Robinson, 36,147 (La.App.2d Cir.12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La. App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490.
LSA-R.S. 14:41, 42 and 42.1 were among the statutes amended by Acts 2001, No. 301, § 1, which, in part, added oral sexual intercourse to the crimes of forcible rape and aggravated rape. LSA-R.S. 14: 42, in pertinent part, defines aggravated rape as follows:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
* * *
LSA-R.S. 14: 42.1 defines forcible rape as follows:
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
(2) When the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by a narcotic or anesthetic agent or other controlled dangerous substance administered by the offender and without the knowledge of the victim.
* * *
This court, in State v. Stevens, 33,700 (La.App.2d Cir.8/23/00), 766 So.2d 634, quoting from State v. Howard, 31,807 (La. App.2d Cir.8/18/99), 746 So.2d 49, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190, and citing State v. Parish, supra, addressed the distinction between the offenses of aggravated rape and forcible rape (pre-amendment):
The distinction between aggravated and forcible rape has been addressed by our supreme court in State v. Parish, 405 *1207 So.2d 1080 (La.1981). The Parish court determined that the legal definition of aggravated rape as defined in La. R.S. 14:42(2) is virtually identical to the definition of forcible rape because there is no essential difference between the specific results required by each crime definition. Both require that the victim be prevented from resisting the act by threat of great harm under circumstances where the victim reasonably believes that resistance would be futile. Forcible rape is merely a lesser degree of the crime of aggravated rape and is a responsive verdict to that crime. The only distinction between aggravated and forcible rape is the degree of force employed and the extent to which the victim resists. However, the jury is authorized to subject a guilty defendant to more severe punishment by convicting him of aggravated rape rather than forcible rape. The court then went on to conclude that it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, thereby assigning to the fact finder the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed. Finally, the court held that the proper standard of appellate review in these type of cases is:
... whether any reasonable jury ..., viewing all of the evidence, in the light most favorable to the prosecution could find beyond a reasonable doubt that the defendant ... [caused] the results required by both the aggravated and forcible rape statutes and that the degree of force employed warranted punishment in the greater, rather than lesser, degree....
Stevens, 766 So.2d at 640.
In State v. Dixon, 04-1019 (La.App. 5th Cir.3/15/05), 900 So.2d 929, the court applied Parish, supra, to aggravated rape and forcible rape following the Acts 2001, No. 301, § 1 amendment:
The difference between aggravated rape and forcible rape is the "degree of force employed and the extent to which the victim resists." A greater degree of force is necessary to justify the more serious punishment imposed for aggravated rape. The degree of force employed and the determination of the grade of rape is for the jury to decide.
Dixon, 900 So.2d at 934 (internal citations omitted).
In this case, the evidence of record clearly supports the jury's determination that when the defendant forced S.C. to perform oral sex on him, she was prevented from resisting the act by threats of great and immediate bodily harm, accompanied by the defendant's apparent power to execute the threats. S.C. testified that when she attempted to escape, the defendant picked her up and slammed her to the floor. He then dragged her into the restroom where he threatened to "snap" her neck. As such, the defendant's actions were clearly tantamount to threats of placing S.C. in fear of great bodily harm. Had S.C. further resisted the defendant, she had every reason to believe that he would continue to physically abuse her. In addition, the defendant was physically much larger than S.C. For these reasons, we find that the evidence before the jury was sufficient to convict the defendant of aggravated rape. Consequently, the trial court did not err in denying the defendant's motion for post-verdict judgment of acquittal. This assignment of error is without merit.

Batson Challenge
In this assignment of error, the defendant argues the trial court erred in *1208 overruling his objection to the state's use of peremptory strikes to exclude blacks from the jury panel, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
In Batson, the defendant, a black man, was indicted on charges of second-degree burglary and receipt of stolen goods. During voir dire, the prosecution used its peremptory challenges to strike all four black persons on the venire, and an all white jury was ultimately selected. The United States Supreme Court held that an equal protection violation occurs if a party exercises a peremptory challenge to exclude a prospective juror on the basis of that person's race. The Court proceeded to outline a three-part analysis to be employed in evaluating an equal protection challenge to a prosecutor's use of a peremptory strike. First, the defendant must make a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." 476 U.S. at 93-94, 106 S.Ct. 1712. Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. 476 U.S. at 94, 106 S.Ct. 1712. Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide ... whether the opponent of the strike has proved purposeful racial discrimination." Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam).[4]
The Batson Court declined "to formulate particular procedures" to prove discriminatory purpose and left the lower courts to determine the quantum of proof necessary for a defendant to establish a prima facie case. However, the Court stated:
In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative.
Batson, 476 U.S. at 97, 106 S.Ct. at 1723.
Recently, in Johnson v. California, ___ U.S. ___, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), the United States Supreme Court explained its holding in Batson as follows:
The Court did not intend the first step to be so onerous that a defendant would have to persuade the judgeon the basis of all the facts, some of which are impossible for the defendant to know with certaintythat the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge *1209 to draw an inference that discrimination has occurred.
Johnson, 125 S.Ct. at 2413.
In Johnson, the defendant, a black man, was convicted in a California state court of assaulting and murdering a white child. During jury selection, a number of prospective jurors were removed for cause until 43 eligible jurors remained, three of whom were black. The prosecutor used three of his twelve peremptory challenges to remove the prospective black jurors, resulting in an all-white jury. The defendant objected to those strikes, arguing they were unconstitutionally based on race. The trial judge did not require the prosecutor to explain the strikes, rather, the judge simply found that the defendant had failed to establish a prima facie case of purposeful discrimination, under California's "more likely than not" standard. Concluding that the state's "more likely than not" standard was an inappropriate tool by which to measure the sufficiency of a prima facie case of purposeful discrimination, the Supreme Court remanded the matter for further proceedings. The Court stated:
Indeed, in Batson, [w]e did not hold that the petitioner had proved discrimination. Rather we remanded the case for further proceedings because the trial court failed to demand an explanation from the prosecutori.e., to proceed to Batson's second stepdespite the fact that the petitioner's evidence supported an inference of discrimination. Ibid.

Thus, in describing the burden-shifting framework, we assumed in Batson that the trial judge would have the benefit of all relevant circumstances, including the prosecutor's explanation, before deciding whether it was more likely than not that the challenge was improperly motivated. We did not intend the first step to be so onerous that a defendant would have to persuade the judgeon the basis of all the facts, some of which are impossible for the defendant to know with certaintythat the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.
Johnson, 125 S.Ct. at 2417.
In State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, the Louisiana Supreme Court held that the sole focus of the Batson inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. The court went on to outline several factors which could lead to the inference of discriminatory intent prohibited by Batson, stating:
The defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent to satisfy this burden. Such facts include, but are not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination.
Green, 655 So.2d at 287-88.
The ultimate burden of persuasion remains on the defendant to prove purposeful discrimination. Green, supra. A trial judge's determination pertaining to purposeful discrimination rests largely on credibility evaluations; therefore, the trial judge's findings are entitled to great deference by the reviewing court. Batson, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21; *1210 State v. Snyder, 98-1078 (La.4/14/99), 750 So.2d 832.
In the instant case, it is undisputed that the jury ultimately empaneled was exclusively white.[5] After the jury was empaneled, but before the panel was sworn, the defense made a Batson challenge, arguing the state had used its peremptory challenges to exclude black jurors from the panel.[6] The colloquy was as follows:
DEFENSE COUNSEL: I think that we would interpose at this point a Batson Challenge because the State, I think this panel is going to be exclusively white.
COURT: ... Make your case. Is that it?
DEFENSE COUNSEL: Yeah, that's it. I mean
COURT:You better make it better than that.
* * *
You make a prima facie case?
DEFENSE COUNSEL: Right.
COURT: So, the fact that the panel ... you think you've stated enough by just saying they're all white?
After much discussion, it was determined that out of 54 members of the venire, 16 were black. The state initially used five of its twelve peremptory challenges to strike blacks, and later utilized an additional peremptory challenge to "back strike" another potential black juror. The trial court overruled the Batson objection, finding that the mere statement that the jury was all white was not sufficient to make a prima facie case to support a Batson objection. Thus, the trial court did not proceed to step two of the Batson analysis, which requires the state to articulate race-neutral explanations for the challenges. After taking judicial notice that less than one third of the jury venire appeared to be black, and the state had exercised one-half of its peremptory challenges on what appeared to be black jurors, the court concluded that the state's actions did not rise to the level of purposeful discrimination.
It has been long held that the ultimate focus of the Batson inquiry is on the prosecutor's intent at the time of the strike. State v. Juniors, 2003-2425 (La.6/29/05), 915 So.2d 291; State v. Green, supra. The trial court plays a unique role in the dynamics of a voir dire, for it is the court that observes firsthand the demeanor of the attorneys and venire persons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript. Juniors, supra; State v. Myers, 99-1803 (La.4/11/00), 761 So.2d 498.
*1211 In this case, we find nothing in the record that undermines the trial court's determination that the defendant failed to make out a prima facie case of discriminatory purpose. We must note that of the six potential black jurors peremptorily challenged by the state, three had been unsuccessfully challenged for cause. Moreover, the defense utilized one of its peremptory strikes to exclude a black potential juror who was selected by the state. Without putting forth any effort to show discriminatory purpose, the defendant's contention that discrimination is apparent from the mere fact that the jury ultimately empaneled was all white is without merit.

Motion for Mistrial
In this assignment of error, the defendant contends the trial court committed reversible error when it denied his motion for mistrial and subsequently failed to admonish the jury to disregard statements made by Billy Bagwell, a Ouachita Parish Sheriff's Deputy. During voir dire, Deputy Bagwell was called in the general venire as a prospective juror for this case. When questioned by the prosecutor, Deputy Bagwell stated that he knew the defendant through his job at the Ouachita Parish Correctional Center.
LSA-C.Cr.P. art. 775[7] provides for a mistrial if prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial or when authorized under LSA-C.Cr.P. art. 770[8] or LSA-C.Cr.P. art. 771.[9] LSA-C.Cr. P. art. 770(2) provides for a mistrial when a remark is made by the judge, *1212 the district attorney, or a court official within the hearing of the jury and the remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. When such a remark is made by a witness, however, LSA-C.Cr. P. art. 771 provides a mistrial is not required, if the court is satisfied an admonition to the jury is sufficient to assure the defendant of a fair trial. State v. Scott, 34,949 (La.App.2d Cir.1/25/02), 823 So.2d 960, writ denied, XXXX-XXXX (La.5/16/03), 843 So.2d 1122.
In addition, LSA-C.Cr.P. art. 775 states, in part, that a defendant's motion for mistrial shall be ordered "when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial." The "prejudicial conduct" may include remarks of veniremen during voir dire. State v. Carmouche, XXXX-XXXX (La.5/14/02), 872 So.2d 1020; State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272. However, a mistrial is a drastic remedy to be invoked only when the defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. Scott, supra; State v. Richardson, 33,272 (La.App.2d Cir.11/1/00), 779 So.2d 771, writ denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1151.
A trial court need not order a new trial absent a showing that comments made by a prospective juror affected other jurors or prejudiced the defendant. Carmouche, supra; State v. Cushenberry, 407 So.2d 700 (La.1981); State v. Hutto, 349 So.2d 318, 320 (La.1977). The determination of whether actual prejudice has occurred lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion. Carmouche, supra; State v. Wessinger, 98-1234 (La.5/28/99), 736 So.2d 162 (statutorily superceded in part by LSA-C.Cr.P. art. 905.2(A)). In deciding the correctness of the trial court's voir dire rulings, a reviewing court considers the entirety of the voir dire record. Carmouche, supra; State v. Hall, 616 So.2d 664 (La.1993).
In the instant case, the statement which the defendant challenged and moved for mistrial occurred during jury selection when the prosecutor questioned Mr. Bagwell. The colloquy at issue was as follows:
[PROSECUTOR]: Can you accept the law?
MR. BAGWELL: Yes ma'am. I don't know if ... I'm a Deputy Sheriff.
[PROSECUTOR]: All right.
MR. BAGWELL: I work at OCC so I[k]now the defendant.
[DEFENSE COUNSEL]: Your Honor, I would move for a side bar.
[PROSECUTOR]: ... Mr. Bagwell, I'm going to skip over you....
Thereafter, when motions to discharge certain jurors were being made, the following transpired:
[DEFENSE COUNSEL]: ... We would move to discharge Mr. Bagwell who works for OPSO [Ouachita Parish Sheriff's Office].
[PROSECUTOR]: Okay. Joint.
[COURT]: Oh, I'm sorry. I could have let him go. Yeah, Mr. Bagwell. He's the one that indicated that and this might be a good time to put your motion on the record. He works for the Sheriff's office apparently at OCC in the *1213 correction center and he alluded to the fact or maybe he stated that he had seen the defendant in jail, correct?
[DEFENSE COUNSEL]: Right.
[COURT]: All right. Well, same
[DEFENSE COUNSEL]: We move for a mistrial because we think the other jurors perhaps heard that.
[COURT]: Well, for the record that objection... that motion was lodged at the bench.
[DEFENSE COUNSEL]: At the bench.
[COURT]: Yeah, before we even began to fully examine this third panel and while I didn't rule I indicated I probably would deny that motion. Now, he said what, Mr. Kincade, exactly? He just said he recognized or knows the defendant... oh, no he disclosed his employment and said he had seen him in jail, right?
[DEFENSE COUNSEL]: I'm not sure
[COURT]:I'm not sure what he said.
[DEFENSE COUNSEL]: I'm not sure he had seen him in jail but I think he said he worked at OCC and had seen him or something to that affect.
[COURT]: Okay. With that almost passing reference it's not clear to all of me (sic) that the fellow jurors even took notice of it and I think the instructions to the jurors at the beginning of the case and at the close of the case will be enough to cure that. But he is excused for cause.
[DEFENSE COUNSEL]: Ask to note our objection to the Court's ruling.
[COURT]: All right. That's noted....
We note this court's decision in State v. Scott, supra. In Scott, during the testimony of Deputy Mike Stone, a witness for the prosecution, the deputy stated that he had known of the defendant for 12 to 15 years. Defense counsel moved for mistrial, contending the deputy's comment inferred that he knew the defendant due to prior criminal activity. This court stated:
Deputy Stone made the statement while under direct examination by the district attorney. Although the district attorney did elicit this information from the witness, it appears that the line of questioning was used for identification purposes only and that the officer was simply stating how long he had known the defendant. The mere fact that a police officer has "known" a person for a number of years does not imply that person has committed other crimes. State v. Young, 426 So.2d 370 (La.App. 2d Cir. 1983).
Scott, 823 So.2d at 966.
Here, Deputy Bagwell's unsolicited comment about "knowing" the defendant from "OCC" was made during the third panel of eighteen prospective jurors. As soon as Deputy Bagwell made the comment, defense counsel requested a side bar, interrupting any further remarks, and the court immediately halted voir dire. When voir dire resumed, Deputy Bagwell was not questioned any further. The record shows that all parties thoroughly examined each prospective juror, and no one was questioned regarding whether they heard Deputy Bagwell's comments. Defense counsel had the opportunity to examine the remaining members of the venire regarding *1214 the comments, and had the opportunity to challenge for cause anyone who may have heard the comments. Yet, the defense failed to do so.
Moreover, the trial court determined that the instructions to the jurors at the beginning and at the close of the case would be sufficient to cure the prospective juror's "almost passing reference." Under these circumstances, we find no abuse of the trial court's discretion in denying the defendant's motion for mistrial.

Motion to Deviate From Mandatory Sentence
In this assignment of error, the defendant argues the trial court erred in denying his motion to deviate from the mandatory life sentence pursuant to State v. Dorthey, 623 So.2d 1276 (La.1993). According to the defendant, the oral sex involved in this case previously fell under the now repealed aggravated oral sexual battery statute, the punishment for which had no mandatory minimum sentence, and a maximum sentence of 20 years with or without hard labor. The defendant contends the mandatory life sentence imposed for such activity is constitutionally excessive.
LSA-R.S. 14:42(D)(1) provides:
Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
It is the legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies, and the courts are charged with applying those punishments unless they are found to be unconstitutional. State v. Stokes, 36,212 (La.App.2d Cir.9/18/02), 828 So.2d 631, writ denied, 2002-2807 (La.9/5/03), 852 So.2d 1023; State v. Koon, 31,177 (La.App.2d Cir.2/24/99), 730 So.2d 503. The decision to assess mandatory life sentences for certain felonies is within the prerogative of the legislature. Id. The assertion that the mandatory life sentence for aggravated rape is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been repeatedly rejected. Stokes, supra; State v. Ingram, 29,172 (La.App.2d Cir.1/24/97), 688 So.2d 657, writ denied, 97-0566 (La.9/5/97), 700 So.2d 505.
In this case, the defendant contends that the mandatory sentence is excessive for the following reasons: (1) he had no prior criminal record; (2) at the time of the offense, he was pursuing his education; (3) his age (22 years old); (4) prior to the repeal of the statute, the maximum penalty for oral sexual battery was two years; and (5) the physical harm to the victim was "negligible."
These precise arguments were expressly rejected by the trial court. In imposing the life sentence, the trial court stated:
I understand your point of view, I understand your arguments and you've made them well. And even if I'm inclined to agree with part of it, I don't think that's the law. I don't think that the law as it presently stands dictates a deviation from the mandatory sentence that the legislature imposed in this case. It's a tough sentence. There's no doubt about it. The only tougher sentence I can think of is death.
* * *
Mr. Kincade, you're making a gallant effort on behalf of your client but ultimately his conduct is what caused this.
* * *
Like I stated before, I derive no pleasure or even satisfaction in dealing out the mandatory sentence. But I don't *1215 have any intention of substituting my own particular notions for what the law requires. I engage in dicta all of the time. But if the law says he gets life, he gets life.
Additionally, in imposing the sentence, the trial court considered a pre-sentencing investigation report, in which the investigator detailed the defendant's history of arrests for crimes against persons, as well as a history of violence against women, including his mother and sister. The investigator further noted that the defendant has continued to deny that he committed the crime. Moreover, during the sentencing hearing, the defendant addressed the court and denied any wrongdoing, insisting that the victim was lying.
The evidence presented shows that the defendant grabbed S.C. from behind, covered her mouth and nose to prevent her from screaming for help, pinned her arms down, lifted her off the ground, and demanded that she perform oral sex on him. When she managed to escape, he picked her up and slammed her to the ground. He then dragged her to the women's restroom and forced her into one of the stalls. He threatened her life to prevent her from further resisting. He then forced her to perform oral sex on him. Based upon the evidence presented, we conclude that this mandatory life sentence does not shock a sense of justice, such as to warrant a deviation from the mandatory sentence. This assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, we affirm the defendant's conviction and sentence.
CONVICTION AFFIRMED; SENTENCE AFFIRMED.
NOTES
[1] The victim's initials are used because of victim confidentiality requirements applicable to the instant case under LSA-R.S. 46:1844(W).
[2] In some portions of the record, the witness's name is spelled "Travis Ruther."
[3] Subsequently, S.C. was treated at the university infirmary. Blood tests were run for HIV and other sexually transmitted diseases, and she was prescribed over-the-counter pain medicines for torso and neck pain caused by the physical assault. S.C. sought mental counseling twice before final exams and Thanksgiving break began. Stress from the assault caused her pharmacy school grades to fall. She lost her scholarship, but was able to get it back after appealing to the university.
[4] The precepts set forth in Batson have been codified in LSA-C.Cr.P. art. 795(C), which provides:

No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
[5] The record contains no official record of the race of the prospective jurors. However, the state made notations regarding those prospective jurors who appeared to be black, which notations were discussed during argument. Consequently, all arguments were, and are, based on assumptions made from the appearances of the prospective jurors.
[6] As a threshold matter, we note that the state contends the defendant's Batson challenge was untimely because it was made at the conclusion of the jury selection, after the prospective jurors from the first two panels had been dismissed and had left the courthouse. We reject the state's contention with little discussion, as the law is clear: A Batson challenge is timely if it is made before the jury is empaneled and sworn. State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272; State v. Williams, 524 So.2d 746 (La.1988). In this case, like the defendants in Batson and Johnson, the defendant's Batson challenge was made near the end of voir dire, before the jury was empaneled and sworn. Therefore, the objection was timely.
[7] LSA-C.Cr.P. art. 775 provides, in pertinent part:

A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
[8] LSA-C.Cr.P. art. 770 provides:

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
[9] LSA-C.Cr.P. art. 771 provides:

In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.