911 So.2d 379 (2005)
STATE of Louisiana, Appellee
v.
Kenneth HILL, Appellant.
No. 40,023-KA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 2005.
*380 Louisiana Appellate Project by W. Jarred Franklin, for Appellant.
Paul J. Carmouche, District Attorney, Lea R. Hall, Jr., Catherine M. Estopinal, Assistant District Attorneys, for Appellee.
Before PEATROSS, MOORE & LOLLEY, JJ.
PEATROSS, J.
Defendant, Kenneth Hill, was convicted of aggravated kidnapping and sentenced to the mandatory sentence of life imprisonment, without benefit of probation, parole or suspension of sentence. Defendant now appeals and, for the reasons stated herein, Defendant's conviction and sentence are affirmed.

FACTS
In the early morning hours of March 22, 2003, B.R.[1] was walking home from a store, down Hollywood Avenue, in Shreveport. She was met on the street by Defendant. As Defendant walked past B.R., he hit her on the back of her neck with his hand, and demanded, "Bitch, where my money at?" B.R. replied, "I don't even know you."[2] At that point, Defendant grabbed her and put a knife to her throat. B.R. dropped her purse and, as she bent down to pick it up, Defendant began pulling her down the street and, ultimately, forced her into a vacant house. The house was without electricity and used by transients and drug users.
Once in the house, Defendant led her into a back bedroom. Defendant, still armed with the knife, ordered B.R. to take off all of her clothes. B.R. removed her *381 clothes and Defendant began beating her and shouting out, "Bitch, if I let you live. If I let you live." He spit in her face, then began moving the knife around her neck and face, telling her she was going to perform oral sex on him, and "... do everything."
Defendant then pulled B.R. into the bathroom, exposed his penis and demanded she hold it while he urinated. He threatened to kill her if she let any of the urine get onto the floor. As B.R. was complying with this demand, she saw flashlights shining through the windows of the house and she began screaming for help. Defendant began hitting B.R. and telling her to "shut up." Defendant then threw the knife into another room and B.R. heard it hit the wall or floor.
Jimmy Lee White was talking on a payphone located on Hollywood Avenue at the same time B.R. had been walking down the street. He also saw Defendant walking down Hollywood. White recognized both B.R. and Defendant from living in the neighborhood. Defendant greeted White as he walked past and the two men had a brief conversation. As White continued to talk on the phone, he watched Defendant approach and grab B.R. The two remained at that spot for a few moments. White saw B.R. drop a purse, then bend down to pick it up. White first thought Defendant was just "playing" around with B.R. He realized there was something wrong, however, as he watched Defendant's actions in dragging B.R. away and after noticing that B.R. was crying. Alarmed, White ended his phone call and ran to a nearby police patrol car driven by Corporal Bonnie Tindall with the Shreveport Police Department. He told her that he had just seen a man grab a woman off the street.
Corporal Tindall followed White to the vacant house and called for backup. As the two walked around the house, waiting for the other officers to arrive, White could hear B.R. crying out, "Oh, Jesus. Oh, my God. Oh, Jesus." White heard Defendant say, "hold my penis," and also heard the sound of Defendant hitting B.R. White then heard Defendant state, "don't you know, you f* *king witch, I'll cut you up." He also heard Defendant tell B.R. that she was going to perform oral sex on him.
Corporal Tindall could hear B.R. crying and Defendant talking, but could not make out any words. Officer Vincent Baurichter was one of the officers to arrive to assist. He heard B.R. crying out for help. Once the additional officers were in place, they went into the front of the house, announced they were the police and then demanded the people inside to come out. B.R. came out first, with her hands raised and totally naked. Her face was red and swollen and she was visibly distraught. A few seconds later, Defendant came out from a back room, complied with an order to get on the floor and was handcuffed. B.R. told the officers that Defendant was going to rape her and Defendant, after being read his Miranda rights, responded, "How can I rape her? This is my wife." B.R. told the officers that she was not married to Defendant and that he had forced her into the house at knifepoint. The officers retrieved the knife in the room as indicated by B.R.
At trial, B.R. and White both testified that they had used crack cocaine in the past. Both denied using any drugs on the night of March 22, 2003. Both had consumed alcohol on that night.
Defendant was found guilty by the jury of aggravated kidnapping. The trial court sentenced Defendant to the mandatory term of life imprisonment, without benefit of probation, parole or suspension of sentence. No motion to reconsider sentence was filed by Defendant.

*382 DISCUSSION

Assignment of Error Number One: Did the State present sufficient evidence to support a conviction of aggravated kidnaping?
Defendant argues that the State failed to prove that he forcibly seized and carried B.R. from one place to another or that it was with the intent to force B.R. into giving up anything of apparent value in order to secure her release. We find no merit in Defendant's argument.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. La. C. Cr. P. art. 821; Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App. 2d Cir.9/27/00), 768 So.2d 687, writs denied, 00-3070 (La.10/26/01), 799 So.2d 1150, 01-2087 (La.4/19/02), 813 So.2d 424.
La. R.S. 14:44 provides, in pertinent part:
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
To convict Defendant of aggravated kidnapping, the State, therefore, had to prove that Defendant forcibly seized or carried B.R. from one place to another, with the intent to force her to give up anything of apparent present or prospective value. Specific intent is a state of mind which may be inferred from the circumstances of the transaction and a defendant's conduct. Whether the requisite intent is present in a kidnapping is determined by the fact finder. State v. Roberts, 31,219 (La.App. 2d Cir.9/23/98), 718 So.2d 1057, writ denied, 99-1191 (La.9/24/99), 749 So.2d 627.
There is no question the evidence establishes that Defendant forcibly seized and carried B.R. from one place (the street), to another (a vacant house). B.R. testified about Defendant using a knife to force her to go with him. The knife was found in the vacant house. The next question is whether Defendant had the specific intent to obtain something of value from B.R. by playing upon her fear and hope of eventual release in order to gain compliance with his demands. State v. Arnold, 548 So.2d 920 (La.1989); Roberts, supra. Proof of intent to extort is shown not merely by the kidnapper's words or actions, but by analyzing whether a reasonable person in the victim's position would believe that she would not be safely released unless she complied with the kidnapper's demands. Arnold, supra; Roberts, supra.
B.R. testified that Defendant stopped her on the street, demanded payment of money from her, forced her at knife point to a vacant house, forced her to strip naked, beat her and told her he was forcing her to engage in sex acts with him. Throughout this ordeal, Defendant made several statements to the effect that if she *383 wanted to live, or not get hurt, she had to do exactly as he demanded. Although Defendant may not have expressly stated to B.R. that if she complied with his demands, she would be freed, a reasonable person in B.R.'s position would reasonably believe that she would be killed or not be safely released unless she complied with all of Defendant's demands.
The State correctly notes that the "something of value" element to prove kidnapping, may be sexual in nature. Arnold, supra; State v. George, 37,492 (La.App. 2d Cir.9/24/03), 855 So.2d 861. It should also be noted that the incident began with Defendant demanding payment of "something of value," i.e., B.R.'s payment of an alleged debt owed to Defendant. Viewing all of the evidence in the light most favorable to the prosecution, the jury could have reasonably concluded that Defendant's threatening actions manifested an intent to exploit B.R.'s fear and force her to surrender something of value in the hope of securing a safe release.
Defendant further argues that the elements were not proven because of the contradictory testimony of B.R. and White. This argument focuses on the admissions by B.R. and White of past drug and alcohol use. This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the present case, the jury heard the witnesses and evidence of their past drug and alcohol use. There is no showing that its decision to give weight to their testimony was an abuse of discretion.
This assignment is, therefore, without merit.

Assignment of Error Number Two: Whether the circumstances of this case warranted a deviation from the statutory life sentence imposed for aggravated kidnaping?
Defendant argues that the life sentence, although legal, was constitutionally excessive. We disagree.
La. R.S. 14:44 provides, in pertinent part:
Whoever commits the crime of aggravated kidnapping shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
In cases where a defendant failed to file a motion to reconsider sentence pursuant to La. C. Cr. P. art. 881.1, this court's review is limited to the claim that the sentence is unconstitutionally excessive. State v. Park, 30,394 (La.App. 2d Cir.2/25/98), 707 So.2d 1058. Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a *384 purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
The statutorily mandated sentence for a conviction of aggravated kidnapping is life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. La. R.S. 14:44. In his brief, Defendant argues his was one of those "rare" circumstances where a downward departure from the life sentence was justified; and, therefore, Defendant seeks a remand for a pre-sentence investigation. Defendant did not, however, provide the trial court or this court with any such factors that would require him to receive a lesser sentence. The State established at trial that Defendant, at knifepoint, and with the threat of death or great bodily harm, forced a woman into a vacant building. She was beaten as she was forced to strip naked. This reflects the potential for immediate deadly consequences to the victim. There is nothing in the record of this case to suggest that the imposition of the statutorily mandated sentence is excessive, nor is it grossly out of proportion to the seriousness of the offense. The sentence does not shock this court's sense of justice, nor has Defendant established that he was entitled to a pre-sentence investigation. Where there is a constitutional mandatory sentence, there is no need for the trial court to justify, under La. C. Cr. P. art. 894.1, a sentence it is legally required to impose. State v. Koon, 31,177 (La.App. 2d Cir.2/24/99), 730 So.2d 503; State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992).
This assignment is without merit.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Defendant, Kenneth Hill, are affirmed.
AFFIRMED.
NOTES
[1] Pursuant to La. 46:1844(W), only the victim's initials are used.
[2] At trial, B.R. testified she only knew Defendant by name, and was not friends with him.